UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DINNTECO INTERNATIONAL, S.L., an
entity of Andorra la Vella,

      Plaintiff,

v.

CAPITOL ELECTRONICS SALES, INC., an
Indiana corporation; EMP DEFENSE, LLC, a
Michigan limited liability company;
SEAHAWKE RIGGING INC., a Florida
corporation; RIPPING IT OUTDOORS LLC, a
Florida limited liability company; and JAY
BHARAT KOTHARI d/b/a EMP Solutions, an
individual residing in the state of Florida,

      Defendants.

Case No. 1:25-cv-22786

**DEFENDANTS EMP DEFENSE, LLC, JAY BHARAT KOTHARI AND CAPITOL
ELECTRONICS SALES, INC.'S COMBINED MOTION TO DISMISS UNDER
RULES 12(b)(3) and 12(b)(6) AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

Page

I.  Introduction ................................................................................................... 1

II.  Background ................................................................................................... 3

    A.  Facts relating to venue for EMP Defense ........................................... 3

    B.  Facts relating to venue for Jay Kothari and EMP Solutions, Inc. ........................... 4

    C.  Facts relating to venue for Capitol Electronics Sales, Inc. .................................... 4

    D.  Dinnteco's Venue Pleading .................................................................. 5

    E.  Facts relating to the patent claim ........................................................ 5

III.  The Law ...................................................................................................... 10

    A.  Venue Requirements in Patent Cases .................................................. 10

    B.  Adequately pleading infringement in patent cases .............................. 12

    C.  Naming Corporate Officers .................................................................. 13

    D.  Customer-Suit Exception .................................................................... 14

IV.  Argument .................................................................................................... 14

    A.  This case must be dismissed under Rule 12(b)(3) ............................... 14

    B.  Dinnteco does not state a claim for patent infringement. ...................... 16

    C.  This case must be dismissed against Mr. Kothari under Rule 12(b)(6). ............... 18

    D.  This Case Against Capitol Should be Stayed Under the Customer-Suit Exception ................................................................................... 18

V.  Conclusion .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) ................................................................................ 13, 17

*Andra Group, LP v. Victoria's Secret Stores, LLC*,
  6 F.4th 1283 (Fed. Cir. 2021) ...................................................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 12

*Bankers Life & Cas. Co. v. Holland*,
  346 U.S. 379 (1953) ................................................................................................ 12, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 12

*Blue Water Innovations, LLC v. Vevazz*,
  2020 WL 6828950 (M.D. Fla. Oct. 9, 2020) ................................................................ 16

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*,
  532 F. Supp. 2d 1350 (M.D. Fla. 2007) ....................................................................... 13

*Bot M8 LLC v. Sony Corp. of America*,
  4 F.4th 1342 (Fed. Cir. 2021) .............................................................................. 3, 13, 17

*CKI 2712218 LLC v. G&L DÉCOR Inc.*,
  Case No. 24-CV-81447-DMM, D.E. 25 (S.D. Fla. Apr. 17, 2025) ......................10, 11, 12, 15

*In re Cray Inc.*,
  871 F .3d 1355 (Fed. Cir. 2017) ..............................................................................10, 11, 15

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) .................................................................................... 14

*In re Nintendo of America, Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ............................................................................... 14, 19

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) ................................................................................. 1, 15

*Marrache v. Bacardi USA, Inc.*,
  17 F. 4th 1084 (11th Circuit 2021) .......................................................................... 13, 18

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) .................................................................. 19

*Mysels v. Barry*,
    332 So. 2d 38 (Fla. Dist. Ct. App. 1976) ............................................. 13, 18

*Rollins, Inc. v. Butland*,
    951 So.2d 860 (Fla. 2d DCA 2006) ......................................................... 13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ............................................................................. 14

**Statutes**

28 U.S.C. § 1400(b) ....................................................................... 1, 12, 14, 16

28 U.S.C. § 1406(a) ................................................................................. 15, 16

**Rules**

Fed. R. Civ. P. 12(b)(3) ............................................................................ 1, 19

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 19

Defendants EMP Defense, LLC ("EMP Defense"), Jay Bharat Kothari ("Mr. Kothari") and Capitol Electronics Sales, Inc. ("Capitol"), by and through undersigned counsel, jointly move this Court for an Order dismissing Plaintiff Dinnteco International, S.L.'s Amended Complaint (DE 26) under Fed. R. Civ. P. 12(b)(3) or in the alternate under Fed. R. Civ. P. 12(b)(6).

## I.     Introduction

This is a patent case where Plaintiff Dinnteco International, S.L. ("Dinnteco"), a company based in Andorra, accuses several entities of infringing U.S. Patent 9,685,775 (the '775 patent).[1] Dinnteco has not established venue against each individual Defendant nor has Dinnteco given adequate notice of infringement. As to each Defendant the case should be dismissed under Rule 12(b)(3) or in the alternate dismissed under Rule 12(b)(6).

The patent venue statute, 28 U.S.C. § 1400(b), makes venue for patent infringement actions proper only where the defendant "resides" or "has committed acts of infringement and has a regular and established place of business." *Id*. This statute "is intended to be restrictive of venue in patent cases compared with the broad general venue provision." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). And venue must be established against each defendant, independent of the others. *See, e.g., Andra Group, LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1287 (Fed. Cir. 2021). Dinnteco cannot meet its burden under § 1400(b) for EMP Defense, Mr. Kothari, or Capitol.

EMP Defense is a Michigan Limited Liability Company with no property, employees, or agents in Florida. Therefore, venue is not proper against EMP Defense in the Southern District of

---

[1] Counsel believed the instant pleading was due September 8, 2025. Because Dinnteco's Amended Complaint created ambiguity concerning when Defendants' response was due, the undersigned contacted Dinnteco counsel. Dinnteco responded as follows: "We agree that there is some ambiguity on the due date. We also agree that your interpretation that the September 8 due date remains in place is reasonable." *See* attached Declaration of Thomas E. Bejin ("Bejin Decl.") at Exhibit C.  Dinnteco filed for default against Seahawke Marine Inc. on September 2, 2025. DE 33. The Court in turn issued an Order setting September 8, 2025 as the response date. DE 36.

1

Florida. Mr. Kothari is a resident of Orange County and is the president of EMP Solutions, Inc., a Nevada Corporation which has no property, employees, or agents in the Southern District. Therefore, venue is not proper against Mr. Kothari or EMP Solutions, Inc., in this District. Capitol is EMP Solutions' customer and is an Indiana corporation with no property, employees, or agents in Florida. Similarly, venue is not proper against Capitol in this District.

Alternatively, EMP Defense, Mr. Kothari, and Capitol jointly move for dismissal under Rule 12(b)(6) because Dinnteco has not provided adequate notice of infringement. Dinnteco's pleading is defective regarding its allegations as to at least two limitations of the claims in the '775 patent. Those limitations are:

1. An insulator element (4) that "externally covers the lower element (3) like a skirt to a lower base thereof, preventing the impact of a lightning bolt on said lower element" ("Skirt Requirement"); and

2. An "expansion and compression valve (5) that connects an outer portion to an inner portion of the hollow assembly and which expands in phases of passage of current, absorption of external induced surges, or a combination thereof and is compressed at an end of a compensation of the variable electric field" ("Valve Requirement").

EMP Defense and EMP Solutions purchase the accused product from Sertec S.R.L. Dinnteco and Sertec were involved in multi-year litigation in Spain regarding the Accused Product and the Spanish equivalent of the '775 Patent. The Spanish trial court and Spanish appellate court held that the Accused Product, as a technical matter (i.e., non-legal), did not meet the Skirt Requirement or the Valve Requirement. While the Spanish court's ruling is not binding on this Court as a matter of collateral estoppel or *res judicata*, the geometric and physics principles that differentiate the '775 patent are geographically agnostic. Thus the Spanish decision is highly informative. It is entirely inadequate for Dinnteco to offer conclusory and implausible allegations which do not provide notice as to these material patent claim elements. Since such amendment

would be futile this case should be dismissed. *See Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342 (Fed. Cir. 2021).

Mr. Kothari separately moves, in the alternate, for dismissal under Rule 12(b)(6) because Mr. Kothari is the president of EMP Solutions, Inc., and he has been improperly brought as a party in his personal capacity.

Capitol separately moves, in the alternate, for a stay of the proceedings under the customer-suit exception. Capitol is a customer of EMP Solutions, Inc., and only purchases the accused product from EMP Solutions, Inc. Failure to stay the proceedings would result in an undue burden to Capitol because Dinnteco cannot collect damages from both EMP Solutions, Inc. and Capitol under the law of the Federal Circuit.

## II.    Background

### A.  Facts relating to venue for EMP Defense

EMP Defense is a Michigan limited liability company. *See* attached Declaration of David Organek ("Organek Decl.") ¶¶ 2, 3. EMP Defense and EMP Solutions are unrelated and they separately import a lightning suppression device from Sertec. *Id.* Sertec is located in Paraguay. *Id.* ¶ 3.

EMP Defense's corporate address is in Newport, Michigan. *Id.* ¶ 2. EMP Defense does not own or rent any physical offices, or other space in Florida. *Id.* ¶ 4. EMP Defense does not have any employees or agents within Florida. *Id.* ¶ 5. EMP Defense does not inventory product in Florida. *Id.* ¶ 9. EMP Defense's web page references Florida Rural Water Association, a trade association of which EMP Defense is a member. *Id.* ¶ 6. EMP Defense sells through independent contractors who reside outside Florida, or by one of several sub-distributors, one of whom is located in Highlands County, Florida. *Id.* ¶ 9. This sub-distributor is neither an agent nor employee of EMP Defense, but rather a separate business wholly unrelated to EMP Defense. EMP Defense

has no control over the sub-distributor. An arm's length contract exists between EMP Defense and its sub-distributor. This sub-distributor does not inventory any of the lightning suppressors. *Id.* When a sub-distributor sells a lightning suppressor, it is shipped from Michigan to the end customer. Such products are installed either by the customer, or by the sub-distributor. *Id.*

**B.   Facts relating to venue for Jay Kothari and EMP Solutions, Inc.**

Mr. Kothari resides in Orange County, City of Orlando which is within the Middle District of Florida. *See* attached Declaration of Jay Kothari ("Kothari Decl.") ¶ 3. Mr. Kothari is the president of EMP Solutions, Inc. a Nevada Corporation. *Id*. ¶ 2. Neither Mr. Kothari nor EMP Solutions own or rent any property in the Southern District of Florida, nor do they have any employees in the Southern District of Florida. Kothari Decl. ¶¶ 11-12, 16. EMP Solutions occasionally receives mail at a mailbox rented by Mr. Kothari at the Postal Center in Brevard County, City of Melbourne. *Id*. ¶ 14. EMP Solutions warehouses limited inventory in Orange County and maintains no inventory in the Southern District of Florida. *Id*. ¶ 15.

**C.   Facts relating to venue for Capitol Electronics Sales, Inc.**

Capitol buys the accused product from EMP Solutions and is an Indiana corporation, with its registered principal office address in Ohio. See attached Declaration of Richard Putt ("Putt Decl.") ¶ 2. Capitol does not own, rent, or have any control of real or personal property in Florida. *Id*. ¶ 5. The work of Capitol is primarily conducted in Ohio, Indiana, and Kentucky, with no regular physical presence in Florida. *Id*. ¶ 6. Capitol has no agents or employees based in the State of Florida, and warehouses no inventory in the state. *Id*. ¶ 7-8. To the extent Capitol's employees or agents perform work in Florida, such work is done on an ad hoc basis from hotel rooms or rented conference rooms for approximately one day at a time. *Id*. ¶ 9. Capitol identifies Fort Lauderdale as the location of its "Technician Office," on Capitol's website. *Id*. ¶ 13. Capitol identifies this office on its website for marketing purposes to show that Capitol can support customers in Florida,

however the Fort Lauderdale location referenced is actually the location of a third-party that specializes in installation, maintenance, and support for the products Capitol sells. *Id*. ¶ 13-14. Capitol has no contractual relationship with the third-party nor does Capitol have any control over the third-party. *Id*. ¶ 13. Capitol's customers are not obligated to use the third-party, nor is the third-party obligated to provide services to Capitol's customers. *Id*. ¶ 15.

### D. Dinnteco's Venue Pleading

Paragraph 11 of Dinnteco's First Amended Complaint provides the extent of its entire allegations regarding venue as to the five named defendants.

> 11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c) and § 1400(b) because *inter alia*, Defendants have offices in this judicial district and conduct business in this judicial district. Also, Defendant Seahawke is incorporated in the State of Florida and Defendant Ripping It, is a Florida limited liability company duly organized under the laws of Florida. Moreover, venue is proper in this judicial district because Defendants have committed acts of infringement in this District and/or a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in the Southern District of Florida.

DE 26 at 3-4. Dinnteco's pleading is silent regarding the moving parties and does not reflect a good faith basis for venue. Counsel for EMP Defense raised the venue concern with Dinnteco by correspondence on August 18, 2025. *See* Bejin Decl., Exhibit B. In response Dinnteco did not set forth facts supporting a good faith basis for venue, but instead indicated that "At a minimum, the Court will provide us with the opportunity to take discovery…" *See* Bejin Decl., Exhibit D at p. 1.

### E. Facts relating to the patent claim

Dinnteco International, S.L. is an entity located in the foreign jurisdiction of Andorra, a tiny country between Spain and France. Dinnteco purports to be the assignee of '775 patent, which claims priority to Spanish patent application 201530389. *See* DE 26-1, '775 patent (Exhibit A to Amended Complaint). The '775 patent claims a "variable electric field balancing device" that purports to suppress lightning. Figure 2 illustrates the device with the following components:



The device has two important features that are material requirements of the '775 patent claims: an insulator in the shape of a skirt labeled "4" in Figure 2 (the "Skirt Requirement") and an expansion and compression valve labeled "5" in Figure 2 (the "Valve Requirement").

As claimed the insulator is in the geometric shape of a skirt and externally covers the lower element. As to the geometry, i.e. being like a skirt, the '775 patent states:

> It is important to point out that this arrangement and *geometry of the insulator element*, covering up to the lower base of the lower passive capture element, *is essential* for the proper functioning of the device.

See DE 26-1, '775 patent, at 3:13-16 (emphasis added). The geometry referenced is the skirt. *Id* at 4:49-55. The expansion and compression valve prevents an over pressure situation that can exist inside the hollow space, which is noted in Figure 2 above. Regarding the valve the '775 patent states:

> This valve is, therefore, a basic element of the device, because without it, the capture assembly could be destroyed in any of the field compensation processes generated.

> If the overpressure generated within the capture assembly can potentially lead to exceeding its working limit, which will be approximately in the order of 200 kA and, therefore, the device may be destroyed, the expansion and compression valve also acts like a safety valve and will jump out of its location, preventing the overpressure from destroying the device.

6

Logically, when this situation occurs the device will stop working until the valve is returned.

*Id.* at 3:33-40. The lightning suppressor made by Sertec operates very differently. While the Sertec device has an insulator element, the insulator element is not like a skirt. To prevent lightning strikes below the insulator element, Sertec does something entirely different – it provides a compensator or alternately called a condenser:



Without the condenser the Sertec device would not work. The Sertec device does not have a valve, because under its different manner of operation there is no increase in pressure inside the hollow space. However, since the devices are outside, water can get into the hollow space. Thus the Sertec device provides for a drain hole, which has a plug.

In March 2021 Dinnteco sued Sertec alleging infringement of the Spanish equivalent of the '775 patent. *See* Bejin Decl., Exhibit A, ¶ 48. Dinnteco reviewed the Sertec device in detail, and lost. On February 15, 2024, the Spanish Trial Court ruled the Sertec device did not infringe. *Id* at p. 30. Dinnteco appealed. On June 20, 2025, while that appeal was pending, Dinnteco initiated

the instant suit. DE 1. On June 27, 2025, the Spanish appellate court ruled the Sertec device did not have a skirt, or a valve. *See* Bejin Decl., Exhibit A (certified English translation of Judgment and original document in Spanish). On July 31, 2025, Dinnteco filed its First Amended Complaint (DE 26), but left its patent infringement allegations unmodified.

Regarding the skirt, the Spanish appellate Court held:

> **17.   We agree at this point with the conclusions of the judgment appealed. The top and bottom electrode isolator element have different structural configuration. While in R1 the isolating element is unique and arranged as the skirt covering the entire lower element, the defendant's products have a white plastic intermediate isolating element that does not cover the lower element. … The plaintiff's Araujo report adds other structural differences that affect the operation of SERTEC devices, such as the existence of an additional plate-shaped condenser that does not appear in patent ES 389 (clearly seen at the bottom of the photograph) or the presence in any of its models of other ball-shaped capacitors distributed around the bottom electrode. …**

> **18.   DINTECO even implicitly admits the different configuration of the isolator element, although it understands that it is not defined in R1 "in terms of its structure, shape or composition, but in terms of the technical function that they must fulfill". ….**

*See* Bejin Decl., Exhibit A, at p. 12. As a purely technical matter, the Spanish Court found the insulating element, which is shown above, did not satisfy the geometry of the requirement that the insulator cover the lower element like a "skirt".

With regard to the valve, the Spanish Court ruled in its paragraphs 28 and 29 as follows:

> **28.   Therefore, facing the considerations of the expert of the complaint, we find the evaluations in the expert report of the plaintiff (Duran report) more plausible, which rejects, plainly and fully, that the SERTEC devices have a compression and expansion valve in the terms claimed. In fact, it should be taken into account, first of all, that SERTEC products already had a hole and a plug at the bottom of the sensor element prior to patent ES 389, a fact that is not in dispute and which is shown by the documents that attached to the claim (brochure of April 2014 in Annex 5 of the expert and documents 28 and 53). In fact, the appeal by DINTECO states that it is irrelevant that the valve is designed by SERTEC as a mere plug, since the relevant thing is whether it is suitable to fulfill the patented function (paragraph 89). According to DINTECO, the plug is intended to facilitate maintenance tasks, allowing inspection of the interior of the device and evacuating possible water condensations that are created inside, basically caused by the exposure of these devices to demanding weather and weather elements (especially rain or snow storms) that cause leaks through the joints of the device.**

> 29.   From this we deduce that the flexible O-ring is only designed to
> facilitate the only possible movement of manual removal and repositioning
> of the plug. In line with what the plaintiff and expert Mr. Durán have
> held, we cannot consider it has been proven that the play that the O-ring
> can give allows to fulfill the function of expansion and compression that
> the C1.7 feature reserves to the valve. It does not seem reasonable that
> the interior power surge on the metal plug can laterally compress the O-
> ring, allowing contact with the exterior.

*See* Bejin Decl., Exhibit A, at p. 17. The Spanish court was clear, that as a matter of physics "we

cannot consider it has been proven that the play that the O-ring can give allows to fulfill the

function of expansion and compression …" *Id*.

Dinnteco's First Amended Complaint, filed after Dinnteco lost its appeal in Spain, sets

forth infringement as follows in paragraph 16:



DE 26 at p. 6. Dinnteco's claim chart makes no effort to show how the accused device meets the

claim language – omitting from the claim chart all claim limitations that are not highlighted. As to

the material elements relating to the Skirt Requirement and the Valve Requirement, Dinnteco's

pleading is implausible. Regarding the Skirt Requirement, Dinnteco points to the insulating

element and anodized coating on the lower section, but fails to explain *how* the insulator meets the geometric requirement that it is "like a skirt." Dinnteco's allegations regarding the valve are equally implausible. As in Spain, Dinnteco points to the drain hole and plug, and as in Spain, Dinnteco is fully aware that the drain hole and plug is not a valve.

## III.   The Law

### A.  Venue Requirements in Patent Cases

The April 2025 decision in *CKI 2712218 LLC v. G&L DÉCOR Inc.*, Case No. 24-CV-81447-DMM, D.E. 25 (S.D. Fla. Apr. 17, 2025) sets forth the controlling principles for patent venue:

> Under Federal Rule of Civil Procedure 12(b)(3) a party may assert the defense of improper venue "as a defense to a claim for relief in any pleading." *Id.* When a defendant objects to venue under 12(b)(3), the plaintiff bears the burden of showing that the venue selected in proper. *See Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (stating that plaintiff must make a prima facie showing of venue). And if "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice," the court may "transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). This decision, however "is left to the sound discretion of the district court." Roofing Sheet *Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F .2d 982, 985 (11th Cir. 1982).
>
> Section 1400(b) is unique to patent law, and "constitute[ s] the exclusive provisions controlling venue in patent infringement proceedings .... " *TC Heartland LLC v. Kraft Food Group Brands LLC*, 581 U.S. 258,259 (2017) (cleaned up). In patent infringement suits, the law of the United States Court of Appeals for the Federal Circuit applies to matters unique to patent law. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc). However, when resolving procedural issues that are not unique to patent law, the law of the United States Court of Appeals for the Eleventh Circuit applies. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). Thus, Federal Circuit law, rather than regional circuit law, governs my analysis of what § 1400(b) requires. *In re Cray Inc.*, 871 F .3d 1355, 1360 (Fed. Cir. 2017).
>
> When evaluating the propriety of venue under Rule 12(b)(3), a district court may examine facts outside the complaint to determine whether its venue is proper. *Ambraco, Inc. v. Bossclip B. V*, 570 F.3d 233, 238 (5th Cir. 2009)*; See 14D Charles A. Wright et al.*, Federal Practice and Procedure § 3826, n.30 (3d ed.) (collecting cases). Although a plaintiff need not plead venue, courts "consider to be true any well-pleaded allegations of the complaint

that bear on venue, unless contradicted by defendant's affidavit evidence." Federal Practice and Procedure § 3826 at nn. 3- 4, 28-29 (same).

Finally, the burden to show proper venue in patent cases is on the plaintiff following a motion challenging proper venue brought by a defendant. *In re ZTE (USA) Inc*., 890 F.3d 1008, 1013-14 (Fed. Cir. 2018).

*CKI* at *2-3.

In *Cray* the Federal Circuit discussed what a patent holder needed to prove to establish "a regular and established place of business." *Cray*, 871 F.3d at 1360. The Federal Circuit identified three factors: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id*.

The decision in *CKI* applied the *Cray* factors and is directly on point. *CKI* involved patent claims combined with FDUPTA claims and arguments that an Amazon warehouse, located in the Southern District was sufficient. Regarding the Amazon warehouse, the *CKI* Court held:

> However I find Plaintiffs assertions in its Response to be largely conclusory. Plaintiff fails to point to facts to demonstrate that Amazon acts at Defendant's direction, as is typical in an agency relationship. The Federal Circuit's decision in *In re Google LLC*, 949 F.3d 1338, 1342 (Fed. Cir. 2020) is instructive in this sense. In Google, plaintiff alleged that two internet service providers (ISPs) who hosted Google's servers were Google's agents because the ISPs were contractually obligated to install and maintain the servers in addition to providing them with network access. Id. at 1345-46. The court determined that the ISPs were, in reality, not agents as they merely provided "Google with a service and Google has no right of interim control over" the ISPs over other key functions. In short, In re Google recognizes that an agency relationship requires that the principal have rights throughout the duration of the relationship to control the agent's acts. "It is for this reason that a mere middleman is not typically an agent." *Pacific Gas and Electric Company v. United States*, 838 F.3d 1341, 1360 (Fed. Cir. 2016).

> It is Plaintiffs burden to establish venue and Plaintiff has offered no facts to show that Defendant is able to control any activity within the Amazon warehouses. The passive act of storing products is not enough, nor is the mere facilitation of Defendant's distribution to customers via shipments from the warehouses. I conclude that on these facts, the second Cray factor is not met.

*CKI* at *6-7.

Likewise, the *CKI* Court found that the Amazon warehouse did not meet the third factor; the Court ruled that the Amazon warehouse was not a place "of the Defendant". *CKI* at *7-9. The Court found that the Amazon relationship was one of a contract to distribute, rather than a lease for space, and hence venue could not be established. *Id.*  Regarding the FDUPTA claims, the court declined to keep the case based on FDUPTA, ruling that pendant jurisdiction could not override the specific requirements of the patent statutes. *CKI* at *10-11.

Finally, in suits against multiple defendants, as is the case here, venue must be proper for each defendant under § 1400(b). *See, e.g., Andra Group, LP v. Victoria's Secret Stores, LLC,* 6 F.4th 1283, 1287 (Fed. Cir. 2021) (holding that venue must be established for each defendant under § 1400(b)); *see also Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (noting that when enacting a statute that is venue restrictive, Congress "must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally." *Id.*).

### B.  Adequately pleading infringement in patent cases

A complaint must be dismissed pursuant to Rule 12(b)(6) when it fails to allege a set of facts that, if true, would entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in a complaint must "raise a right to relief above the speculative level"; a plaintiff must provide "more than labels and conclusions … a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Claims for patent infringement must meet the plausibility requirement: "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed.

Cir. 2021). Although "[a] plaintiff is not required to plead infringement on an element-by-element basis" (*Id.* at 1352), a plausible claim requires at least some factual allegations to support a plausible inference that the product at issue satisfies a claim limitation (*Id.* at 1355. The issue of sufficiency of pleadings in patent cases was discussed in *AlexSam, Inc.,* where the Federal Circuit held sufficiency of the pleading was context dependent:

> We have added that "[t]he level of detail required in any given [patent] case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. Thus, the amount of detail required to provide a defendant the requisite fair notice of the plaintiff's claims will also vary.

*AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39 (Fed. Cir. 2024). There is no bright line rule that is applicable to all cases. *Id*.

The Eleventh Circuit discussed the requirements of a FDUPTA claim when plead coextensively with a Federal Claim. *Marrache v. Bacardi USA, Inc.*, 17 F. 4th 1084 (11th Circuit 2021). There the Court held that a FDUPTA claim that duplicates a Federal Claim, the FDUPTA claim while not preempted, should be dismissed for failing to set forth the necessary requirements of a FDUPTA Claim. *See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1363-1365 (M.D. Fla. 2007). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006) (internal citation and quotations omitted).

### C. Naming Corporate Officers

It is well settled in Florida that not registering to do business in Florida is an insufficient basis to pierce the corporate veil. *See Mysels v. Barry*, 332 So. 2d 38 (Fla. Dist. Ct. App. 1976).

### D.  Customer-Suit Exception

The Federal Circuit has recognized a principle called the "customer-suit" exception, wherein a patent owner files suit against both a manufacturer and the manufacturer's customers. *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Under the customer-suit exception, the suit against the manufacturer takes precedent and the suit against the customer is stayed. *Id*. The purpose of the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination." *Id*. This exception "exists to avoid, if possible, imposing burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id*.

## IV.    Argument

### A.  This case must be dismissed under Rule 12(b)(3)

Defendant EMP Defense is a Michigan LLC. Mr. Kothari is a resident of Orange County, in the Middle District of Florida.  And Capitol is an Indiana Corp. None of them "reside" in Florida under 28 U.S.C. § 1400(b). *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017) (holding that a domestic corporation "resides" only in its state of incorporation for purposes of § 1400(b)).

Dinnteco cannot establish venue based on the principle of "regular and established place of business" in this District under the *Cray* factors. "[A] regular and established place of business requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business." *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (discussing second *Cray* factor). EMP Defense has no employees, nor property (leased/rented or owned) in Florida.

The only possible argument Dinnteco can make against EMP Defense relates to its Highlands, FL, based sub-distributor. However, this relationship is even more remote relative to

venue in Florida than the Amazon warehouse in *CKI*. The sub-distributor has an arm's length contract with EMP Defense. *See* Organek Decl. at ¶ 9. EMP Defense has no employees in Florida, no employees at the sub-distributor, and no control over the sub-distributor. *Id*. EMP Defense does not control the sub-distributor, and thus an agency relationship cannot exist. *Id*. EMP Defense does not inventory any product at the sub-distributor; instead it drop ships product from Michigan. *Id*. Venue cannot be premised on the sub-distributor. *CKI 2712218 LLC v. G&L DÉCOR Inc.*, Case No. 24-CV-81447-DMM, D.E. 25 (S.D. Fla. Apr. 17, 2025). Likewise, the Florida sub-distributor is not a place of the Defendant, EMP Defense, a requirement under the *Cray* factors. *Cray*, 871 F.3d at 1360 ("and (3) it must be the place of the defendant."). As noted in *CKI*, since the sub-distributor is a separate company Dinnteco must show that EMP Defense either owns part of the company, or property, or that the sub-distributor is EMP Defense's alter ego. Dinnteco cannot make any of these showings. *See CKI* at *6-7. All that exists is a contractual relationship and this is not enough to establish venue under § 1400(b). *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018) (a contractual relationship between two entities does not necessarily make the location of the services a regular and established place of business within the district). As to EMP Defense, if not dismissed the case should be transferred to the Eastern District of Michigan under 28 U.S.C. § 1406(a).

Mr. Kothari is the president of EMP Solutions, Inc.[2] Neither EMP Solutions, nor Mr. Kothari personally, own, rent, or have any control of real or personal property in the Southern District of Florida. Kothari Decl. ¶ 11. Additionally, EMP Solutions does not have employees or agents in this District. *Id*. ¶ 16. At best, Dinnteco can establish venue against EMP Solutions in

---

[2] Mr. Kothari provided to Dinnteco documents establishing that EMP Solutions is a Nevada Corporation. *See* Bejin Decl. at Exhibit E. In response Dinnteco claimed that Mr. Kothari is a proper party since EMP Solutions is not registered in Florida. *See* Bejin Decl. at Exhibit F.

the Middle District of Florida where Mr. Kothari resides and conducts the business of EMP Solutions. 28 U.S.C. § 1406(a).

The work of Capitol is conducted in Ohio, Kentucky, and Indiana, with no regular physical presence in the State of Florida. Putt Dec. ¶ 6. Capitol has no regular and established place of business here. Suit against Capitol should be in the Southern District of Ohio. 28 U.S.C. § 1406(a).

As pled, Dinnteco's position is that if it can establish venue against one defendant or some defendants, i.e., against defendant Seahawke and/or defendant Ripping It, that venue is established against all defendants. (DE 26, ¶ 11). But this is not the law. Venue under § 1400(b) must be established for each defendant, unless a defendant waives venue. As the Supreme Court articulated in *Bankers Life*, when Congress enacts a statute that imposes strict venue requirements as § 1400(b) does, Congress "must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally." *Bankers Life* at 384. Dinnteco cannot evade the requirements of § 1400(b) for suit against the moving parties by attempting to establish venue against another defendant.

Dinnteco's threat of discovery would be wasteful. Dinnteco made no effort to provide a basis for venue in its pleading and a fishing expedition is unwarranted. *See, e.g., Blue Water Innovations, LLC v. Vevazz*, 2020 WL 6828950 at *3-5 (M.D. Fla. Oct. 9, 2020) ("permitting Plaintiff to obtain venue discovery in this case would effectively authorize it to engage in an unfounded fishing expedition." *Id*. at *5.).

**B.  Dinnteco does not state a claim for patent infringement.**

Dinnteco has had full and fair discovery of the accused Sertec device. A Spanish court found that as a matter of geometry and physics the Sertec device did not meet the Skirt Requirement and did not meet the Valve Requirement. Instead of accepting its loss, Dinnteco sought to harass Sertec's customers, EMP Defense and EMP Solutions, as well as EMP Solutions'

customers, Capitol, Seahawke Marine and Ripping It. Under *Bot M8,* Dinnteco's pleading must be plausible, and under *AlexSam,* the Court should consider the context that underly the allegations. *See Bot M8,* 4 F.4th at 1353; *see also AlexSam*, 119 F.4th at 39.

Here Dinnteco's allegations fail to provide plausible notice. The insulator ring and coating found in the Sertec device is not plausibly in the geometric shape of a skirt. Further, the First Amended Complaint makes no effort to explain how the drain hole and plug of the Sertec device qualifies as "an expansion and compression valve (5) that connects an outer portion to an inner portion of the hollow assembly and which expands in phases of passage of current, absorption of external induced surges, or a combination thereof and is compressed at an end of a compensation of the variable electric field." DE 26-1, '775 patent at 6:5-10. Dinnteco's allegations are silent as to how it would be plausible for a drain hole and plug to meet the patent requirements. And as a matter of physics Dinnteco knows from Spain that a drain hole cannot. For this reason, amendment would be futile.

Dinnteco has argued that what happened in Spain is entirely irrelevant. *See* Bejin Decl., Exhibit A. But that is not entirely true. While Courts in the United States generally do not find estoppel based on foreign judgments because of the differences in foreign law such foreign activity may constitute admissions against interest and the principles of geometry and physics are geographically agnostic. If Dinnteco believes the accused devices meet the Skirt Requirement, when that same structure did not meet the Skirt Requirement in Spain (*i.e.*, geometry) the moving parties are, at a minimum, entitled to notice and Dinnteco must set forth something plausible. *See Bot M8,* 4 F.4th at 1353; *see also AlexSam*, 119 F.4th at 39. For example, how can the insulator ring and coating have the geometry of a skirt in the plain meaning of that word? Dinnteco's pleading is silent. The same is true for the Valve Requirement. Dinnteco's pleading is again silent.

Between basic common sense and physics it is not hard to understand why Dinnteco has failed to provide notice. A ring is not in the shape of a skirt and a drain hole with a plug is not a valve. Because of this, any amendment would simply be futile.

Because the FDUPTA claim is entirely duplicative of the patent infringement claim, it too must be dismissed. *See Marrache v. Bacardi USA, Inc.*, 17 F. 4th 1084 (11th Circuit 2021).

Dinnteco cannot make a good faith claim that the accused device meets the Skirt Requirement or the Valve Requirement. Respectfully, it appears that this case is being used to improperly disrupt Sertec's business in the U.S. by attacking its distributors and the customers of its distributors.

## C.  This case must be dismissed against Mr. Kothari under Rule 12(b)(6).

Dinnteco does not have a good faith basis to sue Mr. Kothari in his individual capacity. Dinnteco knows that EMP Solutions, Inc. is a Nevada corporation and Mr. Kothari is its President. Kothari Decl. ¶ 5. Dinnteco's argument that Mr. Kothari should be maintained as an individual party because EMP Solutions is not registered in Florida has been long rejected as a basis to pierce the corporate veil and Dinnteco has no good faith basis to say that precedent should be overturned. *Mysels v. Barry*, 332 So. 2d 38 (Fla. Dist. Ct. App. 1976). Dinnteco's claims against Mr. Kothari should be dismissed. Amendment to substitute EMP Solutions is futile because venue is not proper in the Southern District of Florida.

## D.  This Case Against Capitol Should be Stayed Under the Customer-Suit Exception

If this case is not dismissed, the case against Capitol should be stayed. Capitol is a sub-distributor of lightning suppression products purchased from EMP Solutions, Inc. The issues of infringement and invalidity of the '775 patent and the accused lightning suppression products are common to the suits against Capitol and EMP Solutions, Inc. Additionally, if Dinnteco were to collect royalties from EMP Solutions, Inc., this would preclude suit against Capitol. *See*

18

*Nintendo*, 756 F.4[th] at 1366. Similarly, if Dinnteco were to collect lost profits from EMP Solutions, Inc., this would also preclude suit against Capitol because "there can only be one recovery of lost profits for any particular sale." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289 (Fed. Cir. 2017). Therefore, it would be unreasonable to burden Capitol with the defense of a patent infringement suit in a jurisdiction where venue is proper while the case is also litigated against EMP Solutions, Inc., in a separate jurisdiction. *See Nintendo*, 756 F.4[th] at 1365.

## V.    Conclusion

For the foregoing reasons the case should be dismissed for lack of venue under Rule 12(b)(3) or in the alternate, as against EMP Defense transferred to the Eastern District of Michigan, as against EMP Solutions transferred to the Middle District of Florida, and as against Capitol transferred to the Southern District of Ohio. In the event that the Court does not rule on venue and declines to transfer the case should be dismissed under Rule 12(b)(6), and further in the alternate as to Capitol, the case should be stayed under the customer-suit exception.

### Local Rule 7.1 Certification

Pursuant to Local Rule 7.1, I hereby certify that undersigned counsel for Defendants conferred with Plaintiff's counsel in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: September 11, 2025                    Respectfully submitted,

By:    *s/ Gregory S. Weiss*
_____
**Gregory S. Weiss, Esq.**
Florida Bar No. 163430
TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
gweiss@taftlaw.com
Tel. (561) 655-2250

**Thomas E. Bejin, Esq.**
*Admitted Pro Hac Vice*
tbejin@taftlaw.com
**William K. Broman, Esq.**
*Admitted Pro Hac Vice*
wbroman@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
Tel. (248) 351-3000

*Attorneys for Defendants Capitol Electronics Sales, Inc.; EMP Defense, LLC; and Jay Bharat Kothari*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

*s/ Gregory S. Weiss*
GREGORY S. WEISS
Florida Bar No. 163430

<u>SERVICE LIST</u>:

**Elio F. Martinez, Jr., Esq.**
elio.martinez@gray-robinson.com
**Francesca Russo, Esq.**
francesca.russo@grayrobinson.com
GRAYROBINSON, P.A.
333 S.E. 2nd Ave., Suite 3200
Miami, FL 33131
Tel. (305) 416-6880
*Attorneys for Plaintiff*

**Justin B. Levine**
justin.levine@csklegal.com
COLE, SCOTT AND KISSANE
222 Lakeview Avenue Suite 120
West Palm Beach, FL 33401
Tel. (561) 383-9200
*Attorneys for Defendants*