IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-22786-ARTAU/Reid

DINNTECO INTERNATIONAL, S.L., an entity of Andorra la Vella,

    Plaintiff,

v.

CAPITOL ELECTRONICS SALES, INC., an Indiana corporation; EMP DEFENSE, LLC, a Michigan limited liability company; SEAHAWKE MARINE INC., a Florida corporation; RIPPING IT OUTDOORS LLC, a Florida limited liability company; and JAY BHARAT KOTHARI d/b/a EMP Solutions, an individual residing in the state of Florida,

    Defendants.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF COMBINED MOTION TO DISMISS (D.E. 45)**

1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ......................................................................................................... 1
II.  VENUE REMAINS IMPROPER UNDER § 1400(b) ................................................... 2
     A.  Dinnteco Bears the Burden to Establish Venue. ............................................... 2
     B.  Proper Venue For Kothari and EMP Solutions, Inc. is the Middle District ..... 3
     C.  Plaintiff's "Agency" Theories against EMP Defense and Capitol Depart from the Law 3
          1.  Dinnteco's "Agency" Theory For Capitol Fails ...................................... 4
          2.  Plaintiff's  Theory for EMP Defense Fails............................................. 5
III. THE AMENDED COMPLAINT STILL FAILS TO STATE A PLAUSIBLE PATENT CLAIM ............................................................................................................ 6
     A.  The Spanish Litigation Exposes The Pleading Defect...................................... 6
     B.  The Claim Chart Does Not Cure the Element Specific Pleading Gap............. 8
IV.  KOTHARI IS IMPROPERLY SUED IN HIS INDIVIDUAL CAPACITY .......................... 8
V.   THE CUSTOMER SUIT EXCEPTION APPLIES TO CAPITOL AND SEAHAWKE MARINE ......................................................................................................................... 9
VI.  CONCLUSION............................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andra Group, LP v. Victoria's Secret Stores, LLC*,
  6 F.4th 1283 (Fed. Cir. 2021) ...............................................................................................4

*Bot M8, v. Sony Corp. of America*,
  4 F.4th 1342 (Fed. Cir. 2021) .............................................................................................6,8

*Gilmour v. Gates, McDonald and Co.*,
  382 F.3d 1312 (11th Cir. 2004) ............................................................................................3

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) .............................................................................................4

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ..........................................................................................4,5

*In re Nintendo of America, Inc.*
  756 F.3d 1363 (Fed. Cir. 2014) .........................................................................................9,10

*In re Volkswagen Group of America*,
  28 F.4th 1203 (Fed. Cir. 2022) .....................................................................................1,2,4,5

*Meyer v. Holley*,
  537 U.S. 280 (2003) ..............................................................................................................4

*Morford v. Cattelan*,
  2022 WL 2466775 (S.D. Fla. July 6, 2022) .........................................................................3

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
  806 F.2d 1565 (Fed. Cir. 1986) ..........................................................................................1,8

**Other**

35 U.S.C. § 1400(b) ...................................................................................................................5

2 Franch. & Distr. Law & Prac. § 9.42 .....................................................................................5

Restatement (Third) of Agency (Restatement) § 1.01 ..............................................................4

Restatement (Third) of Agency (Restatement) § 1.01(c) .........................................................5

Restatement (Third) of Agency (Restatement) § 1.02(d) .........................................................1

I.  INTRODUCTION

Defendants EMP Defense LLC ("EMP Defense"), Capitol Electronics Sales, Inc. ("Capitol"), Jay Bharat Kothari ("Kothari"), and Seahawke Marine, Inc. ("Seahawke) motion to dismiss Plaintiff's Amended Complaint (D.E. 26) should be granted.

Plaintiff concedes that to establish patent venue, Plaintiff must meet the demanding requirements to show that each defendant has a regular and established place of business in this district. Plaintiff has largely ignored controlling case law and offers novel theories. Plaintiff's most novel argument relates to Defendant Kothari. Here, Plaintiff offers a baseless geographic proximity theory – that while Kothari is not in the Southern District his residence is not far away and therefore venue should nonetheless exist. No precedent supports such a theory.[1] Regarding EMP Defense and Capitol, Plaintiff offers the conclusory argument that venue exist based on agency principles. But, Plaintiff ignores controlling Federal Circuit case law including *In re Volkswagen Group of America*, which held that agency must be proven under strict requirements. 28 F. 4th 1203 (Fed. Cir. 2022)

> Rather, Stratos argues, and must therefore prove, that the dealership entities themselves are Petitioners' agents. See *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1359 (Fed. Cir. 2016) (PG&E) ("The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." (quoting Restatement (Third) of Agency (Restatement) § 1.02(d))).

Contrary to the law, Plaintiff makes no effort whatsoever to demonstrate that the third parties are Defendants' agents. After engaging in months of expensive venue discovery including dozens of interrogatories and requests for production, Plaintiff lacks any good faith argument relative to EMP Defense, Kothari and Capitol.

In opposition to Defendants' Rule 12(b)(6) motion, Plaintiff claims that the Court should disregard the Spanish decision because it is not binding and involves a different patent and different evidence. Defendants' Opening Brief acknowledged that the Spanish Court's decision is not binding and instead advocated that the Spanish Court's ruling illustrated why Plaintiff's pleading was inadequate and why Plaintiff could not amend to cure the deficiencies. Defendants'

---

[1] Kothari is the president of EMP Solutions.  Unrelated to venue, In Plaintiff argues that Kothari can be held personally liable based on, inter alia, *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986). *Orthokinetics* is premised on theories of inducement to infringe. Plaintiff's Amended Complaint does not sufficiently allege facts indicating personal acts of inducement – as required by *Orthokinetics*.

1

argument was purely technical relative to technical features not found in the accused device. This technical analysis is agnostic to geography. Contrary to Plaintiff's argument that it is a different patent, the asserted U.S. patent in this case claims priority to the Spanish patent and share the identical technical specification. See e.g., D.E. 45-2; D.E. 1-1. The only differences relate to translating Spanish to English. The evidence is not different. Rather it is exactly the same – this case involves the identical lightning suppression device litigated in Spain as was litigated here. See e.g., D.E. 45-2; D.E. 1-1. In Spain, and as purely a technical matter the Court found that the device accused in this case lacked two requirements – a skirt and a valve. Defendants' Opening Brief demonstrated how Plaintiff's First Amended Complaint failed to provide notice as to the existence of a skirt and/or a valve in the products sold by Defendants. Plaintiffs also illustrated why, from a purely technical view amendment would be futile. Rather than taking these issues on, Plaintiffs make false and misleading claims about the Spanish proceedings and elect to stand on its defective pleading. In the event that this case is not dismissed for lack of venue under Rule 12(b)(3), Plaintiffs case should be dismissed under Rule 12(b)(6).

Last, in the event that both the 12(b)(3) and 12(b)(6) motions are denied the case against Capitol should be stayed as Capitol and SeaHawke Marine who are mere customers. Plaintiff argues the customer suit exception does not apply because "All of the Defendants in this case are distributors or sub-distributors", rather than manufacturers and customers. Plaintiff is arguing a distinction without a difference. And Plaintiff ignores one of the underlying rationales for the customer-suit exception that applies here: Plaintiff cannot recover damages against EMP Solutions (of which Kothari is the president) AND Capitol, nor can Plaintiff recover damages against Kothari AND Seahawke. If Plaintiff survives the challenges under Rules 12(b)(3) and 12(b)(6) the suits against Capitol and Seahawke should be stayed (with the case against Ripping It already being dismissed).

## II.     VENUE REMAINS IMPROPER UNDER § 1400(b)

### A.  Dinnteco Bears the Burden to Establish Venue.

Dinnteco bears the burden of making a prima facie showing that venue is proper as to each defendant under § 1400(b), and must have done so in the Amended Complaint. *In re Volkswagen Group of America, Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022).[2]

---

[2] The Amended Complaint contains only a boilerplate venue paragraph that does not allege any facts specific to EMP Defense, Capitol, or Kothari. (D.E. 26 ¶ 11). Plaintiff's new venue theories

Even if Plaintiff's new theories were considered, these theories are premised on a mischaracterization of the evidence, a novel legal argument, and otherwise do not satisfy *Cray's* three-part test.

### B. Proper Venue For Kothari and EMP Solutions, Inc. is the Middle District

Kothari is the president of EMP Solutions. Kothari's residence in in the Middle District of Florida and EMP Solution's regular and established places of business are in the Middle District of Florida. Despite this, and representative of Plaintiff's entire approach, Plaintiff offers a novel and legally unsupportable argument. The patent venue statute does not allow suit in another district because a defendant is close to the border of the other district and Plaintiff lacks any legally cognizant basis to argue otherwise.

Plaintiff argues that "because Defendants have disclosed no address for Kothari in the Southern District of Florida, it is impossible for Dinnteco to ascertain with any degree of certainty whether or not Kothari maintains a permanent place of business in the Southern District of Florida without undertaking further investigation, including taking the deposition of Kothari." D.E. 68 at 9. Plaintiff's argument is illogical and disingenuous. Kothari cannot prove a negative. Plaintiff's argument is tantamount to a yet another baseless position – this time founded in the concept that Kothari is a liar. Kothari responded to Plaintiff's interrogatories asking for Kothari's home addresses for the past six years, and EMP Solutions, Inc.'s business addresses for the past six years. There is no evidence to support Plaintiff's position.

Kothari should be dismissed under Rule 12(b)(3).

### C. Plaintiff's "Agency" Theories against EMP Defense and Capitol Depart from the Law

Plaintiff's arguments against EMP Defense and Capitol allege that an agency relationship establishes venue notwithstanding the fact that EMP Defense and Capitol don't otherwise have an

---

(website screenshots, alleged exclusivity, etc.) are not plead. It is well settled that Plaintiff cannot cure deficiencies in their pleadings through an opposition brief. *See Morford v. Cattelan*, 2022 WL 2466775 at n.4 (S.D. Fla. July 6, 2022) (citing *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in an opposition brief.")).

3

established place of business in this district. But as shown herein, Plaintiff's allegation lacks proof. The Federal Circuit has thoroughly explained when an agency relationship arises.

> An agency relationship is a fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act. Restatement (Third) of Agency § 1.01. The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act. *Meyer v. Holley*, 537 U.S. 280, 286 (2003).

*In re Volkswagen*, 28 F.4th at 1208-1209 (citing *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020)).

Plaintiff's theories in opposition utterly fail to establish the essential elements of agency.

### 1. Dinnteco's "Agency" Theory For Capitol Fails

Plaintiff argues that Capitol engages in business in Ft. Lauderdale, FL and therefore venue is proper under the patent venue statute, 35 U.S.C. § 1400(b). Engaging in business alone is insufficient. *Andra Group, LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) (citing *In re Cray*, 871 F.3d at 1364). Capitol has a non-contractual relationship with a "third-party that specializes in the installation, maintenance, and support of a range of electronics products" including those products that Capitol sells. (D.E. 45-10 ¶ 13). Under either *Volkswagen* (supra) or *Google* (supra), this non-contractual relationship does not establish agency. Plaintiff points to Capitol's responses to Interrogatory Nos. 2-3 to support its assertion that this third-party is "the only entity in South Florida that services Capitol's customers in the area." This is a mischaracterization of the interrogatories and Capitol's responses. Interrogatory Nos. 2-3 specifically ask for information about "the 'third-party'" identified in the Declaration of Richard Putt (D.E. 45-10) and the address for the technician office identified on Capitol's website. Although it is true that Capitol recommends this third-party to Capitol's customers, the very nature of Capitol's relationship with the third-party makes it impossible for Capitol to confirm who Capitol's customers use for installation and service – contrary to Plaintiff's argument. (D.E. 45-10 ¶¶ 15-16). Plaintiff also points to an email from the third-party to a prospective purchaser as evidence that the third-party is Capitol's agent. But the third-party merely told the prospective purchaser that the third-party was "proud to be collaborating with Capitol Electronics…". (D.E. 68 at 7). This thin reed of evidence is far from what the law demands to show agency. *See, e.g., In re Volkswagen*, 28 F.4th at 1208-1209

Further, it is well settled that "an agreement to act on behalf of another 'only for specific purposes' does not give rise to a general duty or agency for other purpose." *In re Volkswagen*, 28 F.4th at 1209-1210; see also Restatement (Third) of Agency § 1.01(c). At best, the third party performs one-off instances of installations which in and of themselves under any agency argument cannot be considered "regular and established" – an essential element of § 1400(b). *Id*. (citing *In re Google*, 949 F.3d at 1346).

Capitol should be dismissed under Rule 12(b)(3).

### 2. Plaintiff's Theory for EMP Defense Fails

Plaintiff argues that EMP Defense's sub-distributor is an agent of EMP Defense because the two parties have a Sub-Distribution Agreement and Amended Sub-Distribution Agreement (EMPD000037-65). Plaintiff alleges that the Agreement establishes "that this 'sub-distributor' has an 'exclusive' relationship with EMP and is acting as EMP's agent in the Southern District of Florida." Plaintiff's position is directly contradicted by the Agreement. Section 1.4 of the Agreement states that "At all times, Sub-Distributor shall be deemed an independent contractor to Distributor and not an employee or franchisee." (EMPD000038). "Where a contract establishes an independent contractor relationship rather than an agency relationship and does not grant the principal control over the details of the contractor's work, then evidence must be produced to show that despite the contract terms, a true relationship between the parties gave the principal a right of control." *In re Volkswagen*, 28 F.4th at 1210 (citing and quoting 2 Franch. & Distr. Law & Prac. § 9.42). Plaintiff has provided no evidence that show an agency relationship existed between EMP Defense and its sub-distributor, despite the terms of the Agreements.

Plaintiff does not provide a citation to the specific language in the Agreement that conveys any exclusive relationship. The Agreement contains very limited language which allows for the sub-distributor to have the exclusive right to sell certain of EMP Defense's products to municipal wastewater treatment plants and water treatment plants. (EMPD000052). Apart from this very limited market, the Agreement grants the sub-distributor only a non-exclusive right to sell EMP Defense's products. (EMPD000038; EMPD000052). Additionally, Plaintiff has not cited any evidence that EMP Defense maintains any influence over the sales process undertaken by the sub-Distributor. *See, e.g., In re Volkswagen*, 28 F.4th at 1211. Dinnteco's argument that agency exists

because of an exclusive right to sell to the limited market of municipal wastewater treatment plants and water treatment plants is nonsensical.[3]

EMP Defense should be dismissed under Rule 12(b)(3).

## III. THE AMENDED COMPLAINT STILL FAILS TO STATE A PLAUSIBLE PATENT CLAIM

### A. The Spanish Litigation Exposes The Pleading Defect

As admitted in the opening brief, Defendants did not cite the Spanish decision for purposes of issue preclusion. Rather it did so to illustrate that Plaintiff's pleading failed to provide adequate notice and amendment would be futile. Plaintiff has litigated the same Sertec device for years and the Spanish litigation is evidence that Plaintiff knows the accused product cannot meet the "skirt" and "expansion and compression valve" limitations as a matter of geometry and physics. Yet, Plaintiff still pleads only bare conclusions. In this context, Rule 8 and the *Bot M8* decision require at least some factual explanation as to how the insulator ring and drain plug could function as a "skirt" and "expansion/compression valve" as claimed. But Dinnteco identifies nothing. See *Bot M8*, 4 F.4th at 1353.

Instead, Plaintiff argues that the '775 Patent and the patent asserted in the Spanish litigation are different. As shown in the chart below, the claim language is nearly identical.

| Certified Spanish Translation (D.E. 45-2 at 10) – Claim 1 | '775 Patent – Claim 1 |
|---|---|
| Variable electrical field balancing device that, comprising electrically isolated sensor conductive elements incorporated into a grounded mast (6) (7), is characterized in that it is formed by a hollow assembly comprising an upper passive sensor element (2), acting as a sensor electrode, and a lower passive sensor element (3) r acting as a receiving electrode, both elements may be present (2, 3) various geometric shapes on their outside, and an | A variable electric field balancing device comprising conductive capture elements separated by an electrical insulator incorporated on a mast (**6**) with earth connection (**7**), wherein the variable electric field balancing device further comprises a hollow assembly comprising an upper passive capture element (**2**), which acts as a capture electrode, and a lower passive capture element (**3**), which acts as a reception electrode, and |

---

[3] Beyond Dinnteco's strained interpretation of the Agreements, accepting Dinnteco's argument would require the Court to read language into fully integrated contracts that does not exist.

6

| | |
|---|---|
| isolating element (4) placed between said upper (2) and lower elements (3) keeping them spaced apart from each other at a variable distance (d) depending on the conductivity coefficient of the materials with which said elements are composed (2 and 3), and **the geometry, of this isolator element (4) is such that, as well as internally separating both elements, it externally covers the bottom element (3) as <u>a skirt to the bottom base thereof,</u>** preventing the impact of a beam on such lower element (3) from inducing the generation of an ascending tracer, showing, in addition, **<u>an expansion and compression valve</u> (5) connecting the exterior with the interior of the hollow assembly** and expanding in the phases of current passage and/or absorption of external induced surges, and it is compressed upon completion of field compensation. | both elements (**2**, **3**) may have various geometric shapes on the outside, and an insulator element (**4**) arranged between said upper (**2**) and lower (**3**) elements maintaining them separated from each other at a variable distance (d) dependent on the conductivity coefficient of a set of materials said elements (**2** and **3**) are composed of, and **a geometry of which, of the insulator element (4) is such that, in addition to internally separating the two elements, the insulator element externally covers the lower element (3) like <u>a skirt to a lower base thereof</u>**, preventing the impact of a lightning bolt on said lower element (**3**) from being able to induce the generation of an upward leader, and it also has **<u>an expansion and compression valve</u> (5) that connects an outer portion to an inner portion of the hollow assembly** and which expands in phases of passage of current, absorption of external induced surges, or a combination thereof and is compressed at an end of a compensation of the variable electric field. |

Plaintiff argues that the patent claim considered by the Spanish court did not recite an "insulating" element as claimed by the '775 patent, but rather an "isolating" element. Plaintiff misrepresents the claim language in this respect and misrepresents the exhibit. Although the certified Spanish translation uses the term "isolating element" and the '775 Patent uses the term "insulator element", both elements are referred to with the same element number, 4. Insulate and

7

isolate are synonyms and merely reflect an artifact of translation.[4] Plaintiff's argument that the Spanish Court considered a different patent based on translation differences is unavailing. Nevertheless, Defendants have not argued that the Spanish court's decision is binding – only that it exposes the insurmountable deficiencies in Dinnteco's pleadings.

### B.  The Claim Chart Does Not Cure the Element Specific Pleading Gap

The level of detail required in a pleading depends on case-specific factors, such as "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the infringing device." *Bot M8*, 4 F.4th at 1353. Here, the Spanish litigation is informative of whether Plaintiff's pleading puts Defendants on notice relative to two material requirements of the U.S. Patent – a skirt and a valve. Plaintiff has merely labeled parts of a photograph with reference numerals without any explanation of how those structures perform the claimed functions *when Plaintiffs know from the Spanish litigation that the accused do not perform those functions*. Accordingly, *based on the context of this case*, the pleading is exactly what *Bot M8* rejected as "threadbare" and "conclusory". Defendants are left in the dark with respect to what structural elements Plaintiff's contend perform the claimed functions of the "skirt" and the "expansion/compression valve". Defendants' inability to discern what Plaintiff contends as these two elements is bolstered by the fact that the Spanish courts found the identical devices lacked a "skirt and an "expansion/compression valve".

### IV.    KOTHARI IS IMPROPERLY SUED IN HIS INDIVIDUAL CAPACITY

Kothari is the president of non-party EMP Solutions.  Plaintiff's argument that a corporate officer can be held personally liable for induced infringement implicitly concedes this point. However, Plaintiff relies on cases that highlight why the Amended Complaint is insufficient to name Kothari as an individual defendant. Under *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986), Kothari can only be named as an individual defendant if Plaintiff's sufficiently allege facts indicating personal acts of inducement. Dinnteco's allegations are formulaic, conclusory statements that "Kothari sells" or "offers for sale" infringing products, without any non-boilerplate factual content distinguishing Kothari's acts from those of EMP Solutions. This is inadequate. None of the examples of allegations cited by Plaintiff's would be sufficient under the cases Plaintiff relies on.

---

[4] https://www.merriam-webster.com/dictionary/isolate [last accessed January 20, 2026]

### V. THE CUSTOMER SUIT EXCEPTION APPLIES TO CAPITOL AND SEAHAWKE MARINE

Plaintiff again misrepresents the law in its attempt to keep Capitol and Seahawke involved in this suit. Plaintiff misleadingly states that "[i]n determining whether the customer suit exception applies, courts analyze the following three factors…" and cites to *Tegic Commc'ns Corp.* (D.E. 68 at 16 (citing *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)). Tegic's "three factors" are merely a recitation of the reasons the defendant gave for why the case should be stayed against the defendant. The three factors referenced by Dinnteco are nothing but *dicta*.

Notwithstanding Plaintiff's failed attempt to manufacture a three-factor test for the customer-suit exception, even under that misplaced test the case should be stayed against Capitol and Seahawke. Capitol is (1) merely a reseller of the Sertec lightning suppression device; (2) has agreed to be bound by any judgment of infringement of the '775 Patent against EMP Solutions;[5] and (3) EMP Solutions is the only source of the lightning suppressor Capitol sells. (D.E. 45-10 ¶¶ 17-18). Seahawke is also (1) merely a former reseller of the Sertec lightning suppression device; and (2) - EMP Solutions was the only source of the lightning suppressor Seahawke sold. (D.E. 57-2 ¶ 3).

Plaintiff ignores the Federal Circuit's holding in *In re Nintendo of America, Inc.* 756 F.3d 1363, 1365-1366 (Fed. Cir. 2014). There, the court held that although the circumstances differed from a typical customer-suit exception, the same general principles governed because Nintendo was the true defendant, not Nintendo's retailers. *Id*. Like the facts of *In re Nintendo*, the issues of infringement and validity of Plaintiff's patent is common to EMP Solutions, Capitol and Seahawke.[6] Similarly, Plaintiff would be precluded from collecting royalties from EMP Solutions and Capitol and/or Seahawke.

Notwithstanding Defendants' venue challenge, *In re Nintendo* is instructive regarding the purpose of the customer-suit exception: facilitating just, convenient, efficient, and less expensive

---

[5] To the extent Dinnteco is awarded lost profits or royalties, Dinnteco could collect against EMP Solutions OR Capitol, but not both. While Capitol agrees to be bound by a judgment of infringement against EMP Solutions, it reserves the right to contest any determination of damages.
[6] EMP Solutions is the proper defendant, but to the extent the Court permits the case to proceed against Kothari, the issues of infringement and validity are common to Kothari, Capitol and Seahawke and Dinnteco is similarly limited to collecting royalties from Kothari OR Capitol and Seahawke.

determination while preventing the waste of time, energy, and money and protecting litigants against unnecessary inconvenience and expense. *Id*. at 1366. Plaintiff's extensive and costly venue discovery and novel theories of agency are evidence that any suit that proceeds against Capitol and Seahawke would be duplicative of a suit against EMP Solutions and waste judicial resources.

### VI.   CONCLUSION

For the foregoing reasons, the case should be dismissed for lack of venue under Rule 12(b)(3) with respect to Kothari, EMP Defense and Capitol, or in the alternate, as against EMP Defense, transferred to the Eastern District of Michigan, as against Kothari transferred to the Middle District of Florida, and as against Capitol transferred to the Southern District of Ohio. In the event the Court does not rule on venue and declines to transfer, the case should be dismissed under Rule 12(b)(6).

Dated: January 23, 2026                    Respectfully submitted,

By:   *s/ Gregory S. Weiss*
**Gregory S. Weiss, Esq.**
Florida Bar No. 163430
TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
gweiss@taftlaw.com
Tel. (561) 655-2250

**Thomas E. Bejin, Esq.**
*Admitted Pro Hac Vice*
tbejin@taftlaw.com
**William K. Broman, Esq.**
*Admitted Pro Hac Vice*
wbroman@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
Tel. (248) 351-3000

*Attorneys for Defendants Capitol Electronics Sales, Inc.; EMP Defense, LLC; Jay Bharat Kothari; Seahawke Marine Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

                                          *s/ Gregory S. Weiss*
                                          GREGORY S. WEISS
                                          Florida Bar No. 163430

**SERVICE LIST**:

**Elio F. Martinez, Jr., Esq.**
elio.martinez@gray-robinson.com
**Francesca Russo, Esq.**
francesca.russo@grayrobinson.com
GRAYROBINSON, P.A.
333 S.E. 2nd Ave., Suite 3200
Miami, FL 33131
Tel. (305) 416-6880

**Justin B. Levine**
justin.levine@csklegal.com
COLE, SCOTT AND KISSANE
222 Lakeview Avenue Suite 120
West Palm Beach, FL 33401
Tel. (561) 383-9200